THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
BRYAN B. DAVIS, an individual          )
                                                    Case No.  2:13CV349 DS
          Plaintiff,                   )

          v.                           )

AARON GARRITY, an individual, GARY     )
HOLLISTER, an individual, GORDON
MORTON, an individual, JOSEPH          )       MEMORANDUM
MORTON, an individual, and KENT WOOD,           DECISION
an individual; NATE BROWN, an individual,)
BEVERLY HOLLISTER, an individual;
BRYON J. BENEVENTO, an individual;     )
LESLIE A. GALLACHER, an individual.
                                       )
          Defendant.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

## I.  INTRODUCTION

On May 16, 2013 Plaintiff Bryan Davis sued his former business partners at Xango, LLC, alleging corporate mismanagement and fraud.  On May 19th local newspapers began publishing articles quoting emails from Mr. Benevento to the press stating that Mr. Davis's allegations are "unfounded" and "without merit" and that Mr. Davis filed his lawsuit to embarrass his partners and extract an inflated buyout, and making other allegations.  Mr. Benevento claims that he was merely responding to unsolicited press inquiries, and that his comments were consistent with the allegations of Xango's lawsuit against Mr. Davis, which was filed on May 21, 2013.  Mr. Davis, who considered Mr. Benevento's actions to be part of a "coordinated media smear campaign" launched in retaliation for filing the lawsuit, filed an amended complaint asserting claims of defamation and false light against Mr. Benevento and his clients.  Mr. Benevento then filed this Motion to Dismiss.  For the reasons stated below, the court denies the motion.

Mr. Davis filed his Complaint on May 16, 2013 without contacting the press, and although his counsel's name and contact information were part of the court docket, they received no inquiries about the lawsuit from the press. Almost immediately *The Deseret News, The Salt Lake Tribune,* and *The Daily Herald* began publishing articles quoting emails from Mr. Benevento to the press calling Mr. Davis's allegations "unfounded and "without merit" and accusing Mr. Davis of filing his lawsuit to embarrass his partners and extract an inflated buyout. At this same time, Mr. Benevento's clients issued press releases and sent emails to Xango distributors and employees, and to industry websites calling the lawsuit frivolous and stating that Mr. Davis was "misrepresenting the facts for his personal gain."

In his Motion to Dismiss, Mr. Benevento claims that his statements are protected by the judicial proceeding privilege because he was merely responding to unsolicited press inquiries and his comments were consistent with the allegations of Xango's lawsuit against Mr. Davis, which was filed on May 21, 2013. He also claims that Mr. Davis does not allege any special damages and that the statements were not defamatory *per se.* In reviewing the motion to dismiss, the court will view the motion in the light most favorable to the non-moving party and will accept all well-pleaded facts as true.[1]

## II. ANALYSIS

**A. Mr. Benevento's Statements are not Protected by the Judicial Proceeding Privilege**

In claiming that his statements are protected by the judicial proceeding privilege, Mr. Benevento cites Utah law for the proposition that the judicial proceedings privilege is an absolute privilege protecting those involved in litigation against suits arising from statements made about

---

[1] *Teigen v. Renfrow,* 511 F.3d 1072, 1078 (10th Cir. 2007)

the litigation. He relies heavily on *Moss v. Parr Waddoups Brown Gee & Loveless,* which recognizes that attorneys must "necessarily exercise a wide degree of discretion in performing their duties in the course of judicial proceedings," and therefore attorneys "must be free to pursue the best course charted for their clients without the distraction of a vindictive lawsuit looming on the horizon."[2] *Moss* notes that the judicial proceedings privilege cannot be overcome unless the plaintiff alleges that the attorney has acted outside the scope of his representation of the client, which has not been alleged here.

Contrary to Mr. Benevento's representations, however, Utah law does not recognize the judicial proceedings privilege as an absolute privilege. In *Pratt v. Nelson,*[3] a case nearly on point with this one, the Utah Supreme Court held that statements to the press are not subject to the judicial proceeding privilege both because they are not statements made during the "course of a judicial proceeding" and because statements made to the press would constitute a waiver of the privilege under the excessive publication doctrine even if they were privileged. In *Pratt,* the Court explained, ". . . we generally have interpreted 'during or in the course of a judicial proceeding' broadly to include certain statements made before, during, or even after the proceeding. *But we are disinclined to extend this broad requirement to statements made directly to the press. . . ."* [4]

Mr. Benevento argues that his statements to the press are privileged because he was restating his "client's public litigation position" or "delivering Xango and the Founders' official response to a media inquiry." There are, however, a number of problems with this argument.

---

[2] 285 P.3d 1157, 1166 (Utah 2012).

[3] 2007 UT 41, 164 P.3d 366 (Utah 2007),

[4] *Pratt* , at ¶ 48.

Mr. Benevento's statements were first reported on May 19, 2013, but the state court complaint was not filed until May 21, 2013, so the statements predate the filing of the state court complaint. Also, Mr. Benevento does not represent XanGo and has not appeared in the state court action. He represents the other XanGo founders in this action. Under the judicial proceedings act, "[t]he statement must be made by someone acting, **with respect to the case as hand,** in the capacity of judge, juror, witness, litigant, or counsel."[5] Because Mr. Benevento was not counsel in the state court case, he cannot claim protection of the judicial proceedings privilege.

**B. Even if the Judicial Proceedings Privilege Did Apply, Mr. Benevento's Statements to the Press Constituted a Waiver of the Privilege Under the Excessive Publication Doctrine.**

The *Pratt* case held that even if the judicial proceedings privilege did apply in a case, statements to the press may constitute a waiver of the privilege under the excessive publication doctrine. "A publication is excessive if the statement was published to more persons than necessary to resolve the dispute or further the objectives of the proposed litigation, in other words, if the [statement] was published to those who did not have a legitimate role in resolving the dispute, or if it was published to persons who do not have an adequate legal interest in the outcome of the proposed litigation."[6]

The two factors, then, in determining whether a publication is excessive, causing waiver of the privileged status is (1) whether the recipients of the publication have sufficient connection to the judicial proceeding, and (2) whether the purpose of the judicial proceeding privilege would be furthered by protecting the publication.[7] With regard to the first factor, the court held that

---

[5] *Pratt,* 2007 UT 41 at ¶ 31 (emphasis added).

[6] *Id.* at ¶ 33.

[7] *Id.* at ¶ 36.

4

"the press generally lack a connection to judicial proceedings sufficient to warrant an extension of the judicial privilege to statements made by parties to the press."[8] The court went on to explain that statements to the press are published to more persons than necessary to resolve the dispute or further the objectives of the proposed litigation. The press has no relation to the litigation or clear interest in the outcome of the case. And reporters play no role in resolving a dispute between parties. Thus the press lacks sufficient connection to the pending litigation.

With regard to the second factor, the court stated:

> "No public purpose is served by allowing a person to unqualifiedly make libelous or defamatory statements about another. . . . Thus while a defamatory pleading is privileged, that pleading cannot be a predicate for dissemination of the defamatory matter to the public or third parties not connected with the judicial proceeding. Otherwise, to cause great harm and mischief a person need only file false and defamatory statements as judicial pleadings and then proceed to republish the defamation at will under the cloak of immunity."[9]

The court went on to describe why the purpose of the privilege is not furthered by protecting statements made to the press:

> "the purpose of the judicial proceeding privilege is 'intended to promote the integrity of the adjudicatory proceeding and its truth finding processes.' Moreover, the privilege is meant to encourage 'open, forthright discussion' and to promote 'honest communication between the parties and their counsel in order to resolve disputes.' Statement made and distributed to the press concerning pending or ongoing litigation do little, if anything, to promote the truth finding process in a judicial proceeding. Further, statements made to the press do not generally encourage open and honest discussion between the parties and their counsel in order to resolve disputes; Indeed, such statements often do just the opposite."[10]

All of this rationale applies to the statements made by Mr. Benevento to the press. He claims that the excessive publication doctrine should not apply because he was responding to a

---

[8] *Id.* at 46.

[9] *Id.* at ¶ 47.

[10] *Id.* at ¶ 48.

press inquiry. There is some question as to whether the emails were really responses to unsolicited press inquiries. Mr. Benevento made his statements to the press less than 72 hours after Mr. Davies filed his lawsuit. At that time, Mr. Benevento's clients had not been served and Mr. Benevento had not made an appearance, so there was nothing in the public record to alert the press that Mr. Benevento represented his clients. Plaintiff notes that Mr. Benevento fails to explain how three different reporters from three different newspapers knew so quickly that he was counsel of record before he had made an appearance in the case. It is also telling, that while Mr. Davis's counsel's name and contact information were part of the court docket, Mr. Davis's counsel received no press inquiries until after Mr. Benevento's comments appeared in the press. But it should also be noted that even if the statements were made in response to unsolicited press inquiries, the *Pratt* holding does not suggest that defamatory statements made in response to a press inquiry are privileged.

**C. Mr. Benevento's statements are capable of sustaining a defamatory meaning.**

Mr. Benevento also argues that the case against him should be dismissed because it does not adequately plead the elements of defamation. Because Plaintiff has not alleged special damages, he must demonstrate that the statements were defamatory *per se*. Traditionally, a statement was defamation *per se* if it was false, and if it alleged "criminal conduct on the part of the plaintiff or impute[d] the contracting of some loathsome disease, unchaste behavior (on the part of a woman), or conduct which is incongruous with the exercise of a lawful business, trade, profession, or office.'"[11]

---

[11] *Jacob v. Bezzant,* 2009 UT 37, ¶ 26.

Mr. Benevento argues that his statements do not reflect upon the lawfulness of Plaintiff's business, so they are therefore not defamatory *per se*. The Tenth Circuit, however, in interpreting Utah's defamation *per se* requirements, rejected this argument:

> "The question is whether alleged behavior is *incompatible* with its business . . . not whether the alleged behavior is lawful. Lawful, as used in the formulation of the tort, modifies 'business, trade, profession, or office,' thereby limiting the tort to statements made about "any merchant or trader whose business is a lawful one" and excluding statements about "a person engaged in an unlawful traffic or industry"*[12]*

To constitute a statement that is "incompatible with the exercise of a lawful business" the statement must only affect a person in some way that is peculiarly harmful to one engaged in that trade or profession.[13] Alternatively, a statement may negatively reflect on the plaintiff's "fitness to engage in his business, trade or profession."[14]

Plaintiff notes that the legal question before the Court is whether Mr. Benevento's statements are **capable** of sustaining a defamatory meaning.[15] Plaintiff argues that Mr. Benevento's statements are capable of sustaining a defamatory meeting because they allege that Plaintiff engaged in conduct that violated his unique ethical duties as a lawyer, and alleged that he was incompetent and grossly negligent in his services as a lawyer and business executive. Mr. Benevento publically stated:

---

[12] *Proctor & Gamble Co. V. Haugen,* 222 F.3d 1262, 1277 (10th Cir. 2000).

[13] *Id.*

[14] *Seegmiller v. KSL, Inc.,* 626 P.2d 968, 977, citing Prosser, Law of Torts 754-60 (4th ed. 1971).

[15] *West v. Thomson Newspapers,* 872 P.2d 999 1008 (Utah 1994) ("Whether a statement is capable of sustaining a defamatory meaning is a question of law. If the court determines that the statement is capable of sustaining such a meaning as a matter of law, the trier of fact must then determine whether the statement was in fact so understood by its audience.")

- Mr. Davis's lawsuit was "without merit and nothing more than an attempt to embarrass his partners and force a higher settlement." Am. Compl. ¶ 168
- Mr. Davis's "claims lack merit and are an attempt to embarrass his partners." Am. Compl. ¶ 169.
- "Bryan Davis has taken legal action against his partners in an attempt to extract an inflated buyout from them for his shares in the company." Am. Compl. ¶168
- Mr. Davis's allegations are "unfounded." Am. Compl. ¶170.
- "These gentlemen are committed to the hundreds of people they employ and over a million distributors whom they serve, even as Mr. Davis attempts to sully their good names and their families." Am. Compl. ¶ 170

These statements are capable of sustaining a *per se* defamatory meaning because they allege conduct that is incompatible with Mr. Davis's business as a lawyer by alleging that he violated his unique ethical and professional duties. Mr. Benevento's statements alleging that Mr. Davis was incompetent and grossly negligence are capable of sustaining a *per se* defamatory meaning, because incompetence and gross negligence are incompatible with the legal profession and the rules of professional conduct, and are also incompatible with the fiduciary duties, reputation, and lawful business of an executive and manager of a company.

### D. Mr. Benevento's Statements are Not Protected Opinion

Mr. Benevento asserts his statements that the Davis lawsuit is "unfounded" or "lacks merit" are protected statements of opinion which are not specific in nature and are too vague to be objectively verified or actionable. The Court disagrees. Mr. Benevento did not simply make the vague statement that the lawsuit is unfounded or lacks merit. Rather, his allegation is that Mr. Davis filed a groundless lawsuit, not based in fact, for the improper purpose of embarrassing his partners and their families and extracting a higher settlement. These are factual allegations that are objectively verifiable, not just opinions.

## III.  CONCLUSION

For the foregoing reasons, Defendant Bryon J. Benevento's Motion to Dismiss is hereby denied.

SO ORDERED.

DATED this 17th day of October, 2013.

BY THE COURT

_____

DAVID SAM
SENIOR JUDGE
U.S. DISTRICT COURT